# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 20-1143V
Filed: May 18, 2023

* * * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| SARA and JOSHUA STORM * | |
| *as parents and guardians of K.A.S.,* * | Not For Publication |
| * | |
| Petitioner, * | |
| v.  * | Interim Attorneys' Fees and Costs; |
| * | Respondent Does Not Object; |
| SECRETARY OF HEALTH * | Protracted Litigation. |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

*Kathleen Loucks*, Lommen Abdo Law Firm, Minneapolis, MN, for petitioner.
*Amanda Pasciuto*, United States Department of Justice, Washington, DC, for respondent.

## **DECISION ON INTERIM ATTORNEY'S FEES AND COSTS**[1]

**Roth,** Special Master:

On September 3, 2020, Sara and Joshua Storm ("petitioners"), acting on behalf of their minor son K.A.S., filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioners allege that K.A.S. developed transverse myelitis ("TM") as a result of the Diphtheria/Tetanus/Acellular Pertussis ("DTaP"), Hepatitis B ("Hep B"), Polio, Rotavirus, and/or Haemophilus B Meningococcal Conjugate ("Meningococcal") immunizations he received on September 12, 2017. Petition, ECF No. 1; Amended Petition, ECF No. 41. Petitioners filed their Motion for Interim Attorney's Fees and Costs on November 9, 2022 pursuant to Section 15(e) of

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

the Vaccine Act. Motion for Fees, ECF No. 81. After careful consideration, the undersigned has determined to **grant in part** the request for the reasons set forth below.

## I. Procedural History

The petition was filed on September 3, 2020. ECF No. 1. On September 9, 2020, petitioners filed medical records and an affidavit. Petitioners' Exhibits ("Pet. Ex.") 1-7, ECF No. 6. On September 16, 2020, petitioners filed a Motion for Extension of Time to file additional medical records, which was granted the following day. ECF No. 8. On October 13, 2020, petitioners filed further medical records. Pet. Ex. 10-12, ECF No. 9.

On November 25, 2020, this case was reassigned to the undersigned. ECF No. 13. On March 1, 2021, respondent filed a status report, requesting additional medical records. ECF No. 16. One week later, respondent filed another status report, indicating his intention to defend the case. ECF No. 18.

In April 2021, petitioners filed additional medical records, refiling some of the records previously filed, as well as a status report confirming that the requested records had been filed. Pet. Ex. 1-9, 13, ECF Nos. 21-24.

On June 17, 2021, respondent filed his Rule 4(c) Report, stating his position that the case was not appropriate for compensation. ECF No. 29.

On July 15, 2021, petitioners filed a Motion for Extension of Time to obtain and file an expert report. ECF No. 31; *see also* ECF No. 33. Their Motion was granted in part on July 19, 2021. ECF No. 34.

Petitioners filed additional medical records on August 5, 2021, Pet. Ex. 14-15, ECF No. 35, and on October 28, 2021, Pet. Ex. 16, ECF No. 38. On November 1, 2021, petitioners filed an amended petition, implicating the same vaccines and same injury as alleged in the original petition. Amended Petition, ECF No. 41. The following day, petitioners filed additional medical records. Pet. Ex. 17-18, ECF No. 42.

On November 19, 2021, petitioners filed an expert report from Dr. Donald Chadwick, as well as medical literature. Pet. Ex. 19-22, ECF No. 44. Petitioners filed an expert report from Dr. Robert Turner on November 22, 2021, in addition to medical literature. Pet. Ex. 23-40, ECF No. 47.

On December 21, 2021, respondent filed a status report, confirming that he intended to continue defending the case. ECF No. 49. On January 18, 2022, petitioners filed an expert report from Dr. Omid Akbari with supporting medical literature. Pet. Ex. 41-111, ECF No. 50; *see also* ECF Nos. 69-71.

Following a Motion for Extension of Time, respondent filed responsive expert reports from Dr. Peter Bingham and Dr. Christine McCusker on June 17, 2022, as well as medical literature. Respondent's Exhibits ("Resp. Ex.") A-B, ECF Nos. 54-55. Petitioners filed further medical

records on June 20, 2022, Pet. Ex. 112-13, ECF No. 56, and on June 29, 2022, Pet. Ex. 114, ECF No. 59.

On July 21, 2022, petitioners filed a supplemental expert report by Dr. Akbari, as well as medical literature. Pet. Ex. 115-58, ECF Nos. 61-63, 66, 72-73.

A telephonic status conference was scheduled for and took place on September 22, 2022. The volume of petitioners' submitted medical literature, particularly accompanying Dr. Akbari's reports, was discussed during the conference; petitioners were instructed to only file what is relevant and supports their theory. Following the conference, respondent was ordered to file a status report, advising whether he was amenable to settlement negotiations, and petitioners were ordered to file a supplemental expert report(s). ECF No. 75.

On October 19, 2022, petitioners filed a supplemental expert report by Dr. Akbari and medical literature. Pet. Ex. 159-165, ECF No. 76. Respondent advised on October 24, 2022 that he was amenable to informal resolution of this matter. ECF No. 78. The parties have been engaged in settlement discussions since. ECF Nos. 85, 90, 97.

Petitioners filed a Motion for Interim Fees and Costs and Supportive Brief on November 9, 2022, requesting a total of **$141,625.36**, representing **$68,716.00** in fees and **$72,909.36** in costs. ECF Nos. 80-81.[3] Respondent filed his Response on November 22, 2022, deferring to the undersigned to determine whether the statutory requirements for an award of interim fees and costs were met. Response, ECF No. 84. Petitioners did not file a Reply.

This matter is now ripe for decision.

## II. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum*

---

[3] Petitioners filed their Motion for Fees, including invoices from experts and attorney billing records. *See* Motion for Fees, ECF No. 81. The same day, petitioners filed a 9-page supportive brief, outlining the applicable legal standard and arguing in favor of an award of fees and costs. *See* Supportive Brief, ECF No. 80. Since both were filed as a Motion for Interim Attorney's Fees and Costs, for the sake of clarity, the filing at ECF No. 81 will be referred to as "Motion for Fees" and the filing at ECF No. 80 will be referred to as "Supportive Brief" throughout this Decision.

*v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*. The lodestar method is also used to calculate a reasonable expert fee. *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *1 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

### III. Discussion

**A.     Availability of Interim Fees**

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. This case has been pending for nearly three years and petitioners have incurred significant costs for their experts. This ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g., Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees).

Petitioners have expended significant time and costs in litigating this matter thus far. This matter is on a dual track for settlement discussions and proceeding to hearing in the event that informal resolution is not possible. Although the parties have been actively engaged in settlement negotiations for seven months, it is unclear when this matter will reach a conclusion. Further, since respondent raised no objections to petitioners' application but deferred to the special master to

determine whether the statutory requirements for interim fees had been met, his lack of any specific objection is taken into consideration. Response at 2, ECF No. 84. In sum, the circumstances of this case warrant an award of interim fees and costs, so as not to impose economic hardship on petitioners.

**B.      Reasonable Hourly Rates**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

The Lommen Abdo firm has been recognized to practice in forum, entitling them to commensurate rates established in *McCulloch*. *See L.D. v. Sec'y of Health & Human Servs.*, No. 22–0495V, 2023 WL 2776881, at *3 (Fed. Cl. Spec. Mstr. Apr. 4, 2023); *Halbrook v. Sec'y of Health & Human Servs.*, No. 19-1572V, 2021 WL 1193541, at *3 (Fed. Cl. Spec. Mstr. Mar. 9, 2021). Petitioners requested fees in various rates of compensation for Ms. Loucks and paralegals at the firm. The rates requested are as follows:

| Name | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|
| Ms. Loucks | $360 | $362 | $365 | $370 |
| Ms. Chapman | n/a | n/a | $137 | $139 |
| Ms. Novak | $135 | $137 | $139 | $142 |
| Ms. Dehnke | n/a | n/a | n/a | $139 |
| Ms. Grenell | n/a | n/a | n/a | $140 |

*See* Motion for Fees at 5-7.[5]

---

[4] The 2015-2023 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.,* No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[5] Ms. Chapman, Ms. Novak, Ms. Dehnke, and Ms. Grenell are paralegals at the firm. *See* Motion for Fees at 5-7.

5

The requested rates (or higher) have been awarded by other Special Masters in previous decisions. *See L.D.*, No. 22–0495V, 2023 WL 2776881, at *3 (awarding the requested rates—or higher—for 2020-2022); *Halbrook*, No. 19-1572V, 2021 WL 1193541, at *3 (awarding the requested rates for 2019-2020); *Isenor v. Sec'y of Health & Human Servs.*, No. 19-1996V, 2022 WL 2762618, at *2 (Fed. Cl. Spec. Mstr. June 30, 2022) (awarding the requested rates for 2019-2021); *Hedlund v. Sec'y of Health & Human Servs.*, No. 18-820V, 2022 WL 3133454, at *2 (Fed. Cl. Spec. Mstr. July 15, 2022) (same). The requested paralegal rates are lower than those approved in the Fee Schedule.[6]

Based on the foregoing, I find the hourly rates billed by petitioners to be reasonable.

**C.     Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases); *see also Knox v. Sec'y of Health & Human Servs.*, No. 90–33V, 1991 WL 33242, at *7 (Fed. Cl. Spec. Mstr. Feb. 22, 1991) (finding that "50% of the expert's [travel] time should be compensated"). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the hours billed by the Lommen Abdo firm, I find that the entries are detailed, and the time spent on each matter reasonably corresponds with the work performed. Thus, the hours spent on this matter are reasonable.

---

[6] *Supra* note 4.

**D.     Reasonable Costs**

      **i.     Costs Related to Dr. Akbari**

Petitioners requested fees for their expert, Dr. Akbari. Dr. Akbari holds a Ph.D. in molecular and cellular immunology and is a Professor of Immunology at University of Southern California Keck School of Medicine. *See* Supportive Brief at 4; Pet. Ex. 42. Dr. Akbari is clearly a well-accomplished scholar, and his opinion has been helpful in resolving other vaccine cases.

Petitioners requested an hourly rate of $550.00 for Dr. Akbari for 98.4 hours of work plus a $5,000.00 retainer in this matter. Supportive Brief at 4; Motion for Fees at 59, 67-69, 74-77. Dr. Akbari has submitted three expert reports and over 100 references in this case. *See generally* Pet. Ex. 41, 115, 159. His initial expert report was 31 pages, in which he summarized K.A.S.'s relevant medical history, provided an overview of the immune system, and described the proposed immunological mechanism that caused the injury alleged here. *See* Pet. Ex. 41. His next two reports were 19 pages (Pet. Ex. 115) and 6 pages (Pet. Ex. 159), wherein Dr. Akbari responded to respondent's experts.

Petitioners acknowledged in their Motion for Fees that Dr. Akbari has consistently been awarded an hourly rate of $500.00 by other special masters in the Program. *Id.*; *see Reinhardt v. Sec'y of Health & Human Servs.*, No. 17-1257V, 2021 WL 2373818 (Fed. Cl. Apr. 22, 2021); *Hernandez v. Sec'y of Health & Human Servs.*, No. 16-1508V, 2018 WL 4391060 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); *Shinskey v. Sec'y of Health & Human Servs.*, No. 15-713V, 2019 WL 2064558 (Fed. Cl. Spec. Mstr. May 9, 2019); *Sheppard v. Sec'y of Health & Human Servs.*, No. 17-819V, 2020 WL 1027958 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Bisceglia v. Sec'y of Health & Human Servs.*, No. 19-91V, 2020 WL 6146101 (Fed. Cl. Spec. Mstr. Sep. 20, 2020); *Robinson v. Sec'y of Health & Human Servs.*, No. 15-967V, 2018 WL 5629850 (Fed. Cl. Spec. Mstr. Sep. 12, 2018). I find that $500.00 per hour, as has been consistently awarded to Dr. Akbari, is an appropriate hourly rate. While Dr. Akbari provided three expert reports, he billed for 98.4 hours, which represents an unusually large expenditure of time for a case that has not yet had a hearing. Given the issues in this case, I am inclined to award the hours requested, but I caution Dr. Akbari and counsel to endeavor to reduce the number of hours billed henceforth. In awarding fees for the requested hours billed, I recognize that Dr. Akbari provided very detailed records of the time he spent on this case.

Thus, I find the hours spent on this matter to be reasonable. However, as discussed above, Dr. Akbari's hourly rate is reduced to $500.00, resulting in a **reduction of $4,920.00.**

      **ii.     Costs Related to Dr. Chadwick**

Petitioners requested $7,200.00 in costs for their expert, Dr. Chadwick. Motion for Fees at 36, 65. Dr. Chadwick submitted one expert report, totaling 5 pages. Pet. Ex. 19. Dr. Chadwick's invoice states only "17 hour record review and 1 hr attorney conference". Motion for Fees at 65.

7

Thus, he billed at a rate of $400.00 per hour for 18 hours of work on this matter. Supportive Brief at 7.

A reasonable hourly rate has not yet been determined for Dr. Chadwick, as this is his first case in the Program. Supportive Brief at 7. Nevertheless, I find an hourly rate of $400.00 for a pediatric neurologist to be reasonable. For example, Dr. Marcel Kinsbourne is a pediatric neurologist who is very familiar to the Vaccine Program, and he is consistently awarded an hourly rate of $500.00. *See Romero v. Sec'y of Health & Human Servs.*, No. 18-1625V, 2023 WL 2598014, at *6 (Fed. Cl. Spec. Mstr. Mar. 22, 2023).

However, Dr. Chadwick billed for 18 hours of time, but his invoice does not contain any useful explanation as to how his time was spent. *See* Motion for Fees at 65. Experts, like the attorneys, must document their hours with sufficient detail to allow special masters to assess the reasonableness of the hours logged. Given that Dr. Chadwick is new to the Vaccine Program and respondent did not object to his invoice or payment, I will reduce Dr. Chadwick's requested fee by only 5% for failure to adequately document his time. In the future, counsel is cautioned to ensure that all experts provide detailed billing records. Based on the foregoing, Dr. Chadwick's fee is reduced by 5%, resulting in a **reduction of $360.00.**

    **iii.**    **Costs Related to Dr. Turner**

Petitioners requested $8,140.30 in costs for their expert, Dr. Turner. Motion for Fees at 36; Supportive Brief at 6. Dr. Turner submitted one 9-page expert report in this matter. Pet. Ex. 23. He billed at a rate of $400.00 per hour for 20.3 hours of work. Motion for Fees at 70; Supportive Brief at 6. This rate is lower than the rate Dr. Turner has been awarded previously. *Reinhardt v. Sec'y of Health & Human Servs.*, No. 17-1257V, 2021 WL 2373818, at *6-*7 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (awarding Dr. Turner an hourly rate of $550.00). Thus, I find Dr. Turner's hourly rate to be reasonable. Further, I find Dr. Turner's billing record to be extremely thorough and the time he spent on this matter to be reasonable. However, the math in the invoice appears to be incorrect. The sum for 20.3 hours at $400.00 per hour is $8,120.00—not the requested $8,140.30. Thus, Dr. Turner will be awarded $8,120.00 for his work on this case, resulting in a **reduction of $20.30.**

    **iv.**    **Miscellaneous Costs**

In addition to the costs related to their experts, petitioners requested $3,449.06 to cover other miscellaneous expenses, including medical record requests and shipping costs. *See* Motion for Fees at 35-37. Petitioners filed sufficient documentation to support their request. I find these costs reasonable and award them in full.

### IV. Total Award Summary

Based on the foregoing, petitioners' Motion for Interim Attorneys' Fees and Costs is **GRANTED IN PART**. Accordingly, I award **$136,325.06,[7]** representing **$68,716.00** in attorneys'

---

[7] Petitioners requested $141,625.36. The new total of $136,325.06 reflects the three reductions made. Dr. Akbari billed 98.4 hours at a rate of $550.00. His rate was reduced to $500.00. Thus, his fee is calculated

fees and **$67,609.06** in attorneys' costs in the form of a check payable jointly to **petitioners Sara and Joshua Storm and petitioners' counsel, Kathleen Loucks of the Lommen Abdo Law Firm. The clerk shall enter judgment accordingly.**[8]

    **IT IS SO ORDERED.**

<u>s/Mindy Michaels Roth</u>
Mindy Michaels Roth
Special Master

---

as follows: 98.4 (hours) x 500 (rate) = $49,200.00. Dr. Chadwick billed $7,200.00, which was then reduced by 5%. Thus, Dr. Chadwick's fee is calculated as follows: 7,200 (requested fee) x .95 (percentage awarded) = $6,840. Finally, Dr. Turner billed $8,140.30 for 20.3 hours of work at an hourly rate of $400.00 but his math calculation was in error. Dr. Turner's fee is calculated as follows: 20.3 (hours) x 400 (rate) = $8,120.00. The total expert costs in addition to the $3,449.06 for miscellaneous costs equals $67,609.06 for all costs contained in the Motion for Fees.

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.